# EXHIBIT B

**ALBANY COUNTY – STATE OF NEW YORK**
**BRUCE A. HIDLEY COUNTY CLERK**
**16 EAGLE STREET, ALBANY, NEW YORK 12207**

**COUNTY CLERK'S RECORDING PAGE**
***THIS PAGE IS PART OF THE DOCUMENT – DO NOT DETACH***

INSTRUMENT #: R2019-24415

Receipt#: 20190351257
Clerk: SC
Rec Date: 11/14/2019 12:45:58 PM
Doc Grp: M
Descrip: MORTGAGE
Num Pgs: 13
Rec'd Frm: HODOROWSKI HOLDINGS LLC

Party1: HODOROWSKI HOLDINGS LLC
Party2: M&T BANK
Muni: BETHLEHEM TOWN

Recording:

| | |
|---|---|
| Cover Page | 5.00 |
| Recording Fee | 80.00 |
| Cultural Ed | 14.25 |
| Records Management - Coun | 1.00 |
| Records Management - Stat | 4.75 |
| Sub Total: | 105.00 |
| Mortgage Tax | |
| Basic | 2125.00 |
| Additional | 1062.50 |
| Special Additional | 1062.50 |
| Local | 1062.50 |
| Sub Total: | 5312.50 |
| Total: | 5417.50 |

**** NOTICE: THIS IS NOT A BILL ****

***** Mortgage Tax *****
Serial #: DK-5277
Commercial
Mtg Amt: 425000.00

| | |
|---|---|
| Basic | 2125.00 |
| Additional | 1062.50 |
| Special Additional | 1062.50 |
| Local | 1062.50 |
| Total: | 5312.50 |

THIS PAGE CONSTITUTES THE CLERK'S ENDORSEMENT, REQUIRED BY SECTION 316-a (5) & 319 OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK.

Record and Return To:

BOX 20

Bruce A. Hidley
Albany County Clerk

M&T Bank

AFTER RECORDING RETURN TO:
Andrew B. Amerling, Esq.
DeGraff, Foy & Kunz, LLP
41 State Street - Suite 901
Albany NY 12207

Box 20

# MORTGAGE

**Date: As of October 31 , 2019**

**Mortgagor** (Name): **Hodorowski Holdings, LLC**
(Organizational Structure): **limited liability company**
(State Law organized under): **New York**
(Organizational Identification Number, if any; note that this is NOT a request for the Taxpayer Identification Number):
(Address of residence/chief executive office): **796 Burdeck Street, Schenectady, New York 12306**

**Mortgagee:** M&T BANK, a New York banking corporation having offices at One M&T Plaza, Buffalo, New York 14203, Attn: Office of General Counsel.

WITNESSETH, to secure (a) the payment of an indebtedness in the principal sum of **Four Hundred Twenty Five Thousand and 00/100 Dollars ($425,000.00)**, lawful money of the United States, together with interest thereon and other charges with respect thereto, to be paid according to a certain **Term Note**, bond, note or other obligation dated on or about as of October 31 , 2019, (i) made and delivered by Mortgagor to Mortgagee ~~or (ii) made and delivered by ______________ ("Debtor") to Mortgagee~~ (the "Note") and (b) if the Note is guaranteed by Mortgagor, to the extent of such principal sum and such interest and other charges, such guaranty (the "Guaranty"), Mortgagor hereby mortgages to Mortgagee, as continuing and collateral security for the payment of any and all indebtedness, liabilities and obligations of Mortgagor (or Debtor) to Mortgagee, now existing or which may hereafter arise pursuant to or in connection with (as further described below) the Note, the Guaranty, this Mortgage or any amendments, renewals, extensions, modifications or substitutions of the Note, the Guaranty or this Mortgage (collectively, the "Indebtedness"), the premises described on the attached Schedule A.

TOGETHER with all buildings, structures and other improvements now or hereafter erected, constructed or situated upon said premises, and all now owned and hereafter acquired fixtures and equipment and other goods, as-extracted items, and timber to be cut (as such terms and categories may be defined or described in the UCC (as defined herein)) now or hereafter affixed to, or used in connection with, said premises and any and all replacements of, substitutions for, and additions to the foregoing, all of which shall be deemed to be and remain and form a part of said premises and are covered by the lien of this Mortgage (said premises, buildings, structures, other improvements, fixtures and equipment and other goods, as-extracted items and timber to be cut, and all proceeds, products, rents, issues, profits and accounts arising therefrom, being collectively referred to as the "Premises"),

TOGETHER with all strips and gores of land adjoining or abutting the Premises,

TOGETHER with all right, title and interest of Mortgagor in and to all streets, alleys, highways, waterways and public places open or proposed in front of, running through or adjoining the Premises, and all easements and rights of way, public and private, now or hereafter used in connection with the Premises,

TOGETHER with all tenements, hereditaments and appurtenances and all the estate and rights of Mortgagor in and to the Premises,

TOGETHER with all awards heretofore or hereafter made by any federal, state, county, municipal or other governmental authority, or by whomsoever made in any condemnation or eminent domain proceedings whatsoever, to the present or subsequent owners of the Premises or any portion thereof, for the acquisition for public purposes of the Premises or any portion thereof or any interest therein or any use thereof, or for consequential damages on account thereof, including any award for any change of grade of streets affecting the Premises or any portion thereof and any award for any damage to the Premises or any portion thereof or any interest therein or any use thereof,

TOGETHER with all licenses and permits used or required in connection with the use of said Premises, all leases and sales contracts of said Premises now or hereafter entered into and all right, title and interest of Mortgagor thereunder, including without limitation, cash or securities deposited thereunder pursuant to said leases or sales contracts, and all rents, issues, proceeds, and profits accruing from said Premises and together with all proceeds of the conversion, voluntary or involuntary of any of the foregoing into cash or liquidated claims, including without limitation, proceeds of insurance and condemnation awards,

**PROVIDED, HOWEVER, if, now or in the future, any of the obligations secured pursuant to any security interest or lien created by this instrument include any Special Flood Zone Loan, then the following shall apply: any such Special Flood Zone Loan shall not be secured pursuant to any security interest or lien created by this instrument in personal property that would constitute "contents" located within Flood Zone Improvements securing such Special Flood Zone Loan, where, for purposes of the foregoing, "Flood Zone Improvements" means any "improved" real property that is located within a Special Flood Hazard Area, a "Special Flood Zone Loan" means a loan, line of credit or other credit facility which is secured by Flood Zone Improvements, and the terms "improved" real property, "Special Flood Hazard Area," and "contents" shall have the meaning ascribed to them by the Flood Disaster Protection Act of 1973, 42 U.S.C. § 4001 et seq., and implementing regulations, 44 C.F.R. Parts 59 et seq., and/or the Federal Emergency Management Agency, all as may be amended from time to time.**

MORTGAGOR COVENANTS WITH MORTGAGEE SO LONG AS THIS MORTGAGE IS IN EFFECT AS FOLLOWS:

 © M&T Bank, 2019

1. **INDEBTEDNESS.** The Indebtedness shall be paid as provided in the Note or Guaranty, as the case may be, and as provided herein. Additionally, Mortgagor acknowledges and agrees that any amounts now or hereafter due and owing from Mortgagor (or Debtor) to Mortgagee arising from or in connection with any interest rate swap agreement, now existing or hereafter entered into between Mortgagor (or Debtor) and Mortgagee, and any costs incurred by Mortgagee in connection therewith, including, without limitation, any interest, expenses, fees, penalties or other charges associated with any obligations undertaken by Mortgagee to hedge or offset Mortgagee's obligations pursuant to such swap agreement, or the termination of any such obligations, shall be (i) deemed additional interest and/or a related expense (to be determined in the sole discretion of Mortgagee) due in connection with the principal amount of the Indebtedness secured by this Mortgage, (ii) included (in the manner described above) as part of the Indebtedness secured by this Mortgage, and secured by this Mortgage to the full extent thereof, and (iii) included in any judgment in any proceeding instituted by Mortgagee or its agents against Mortgagor for foreclosure of this Mortgage or otherwise.

2. **INSURANCE.** Mortgagor shall keep the Premises insured against each risk to which the Premises may from time to time be subject (including fire, vandalism and other risks covered by all risk insurance; if requested by Mortgagee, earthquake; if the Premises or any portion thereof are located in an area identified as an area having special flood hazards and in which flood insurance has been made available, flood; and loss of rents by reason of such risks) for the benefit of Mortgagee. Such insurance shall be provided in such amounts, for such periods, in such form, with such special endorsements, on such terms and by such companies and against such risks as shall be satisfactory to Mortgagee. Without limiting the generality of the preceding two sentences, each policy pursuant to which such insurance is provided shall contain a mortgagee clause, in form and substance satisfactory to Mortgagee, (a) naming Mortgagee as mortgagee and (b) providing that (i) all moneys payable pursuant to such insurance shall be payable to Mortgagee, (ii) such insurance shall not be affected by any act or neglect of Mortgagor or Mortgagee, any occupancy, operation or use of the Premises or any portion thereof for purposes more hazardous than permitted by the terms of such policy, any foreclosure or other proceeding or notice of sale relating to the Premises or any portion thereof or any change in the title to or ownership of the Premises or any portion thereof and (iii) such policy and such mortgagee clause may not be canceled or amended except upon thirty (30) days' prior written notice to Mortgagee. Mortgagor hereby assigns and shall deliver each policy pursuant to which any such insurance is provided to Mortgagee. The acceptance by Mortgagee of such policies from Mortgagor shall not be deemed or construed as an approval by Mortgagee of the form, sufficiency or amount of such insurance. Mortgagee does not in any way represent that such insurance, whether in scope or coverage or limits of coverage, is adequate or sufficient to protect the business or interest of Mortgagor. In the event of the foreclosure of this Mortgage, or a transfer of title to the Premises in extinguishment of the Indebtedness, all right, title and interest of Mortgagor in and to any such policies then in force shall pass to the purchaser or grantee of the Premises. All the provisions of this Section 2 and any other provisions of this Mortgage pertaining to insurance which may be required under this Mortgage shall be construed with Section 254, Subdivision 4 of the New York Real Property Law, but, said Section 254 to the contrary notwithstanding, Mortgagor consents that Mortgagee may, without qualification or limitation by virtue of said Section 254, retain and apply the proceeds of any such insurance in satisfaction or reduction of the Indebtedness, whether or not then due and payable, or it may pay the same, wholly or in part, to any Mortgagor for the repair or replacement of the Premises or for any other purpose satisfactory to Mortgagee, without affecting the lien of this Mortgage for the full amount of the Indebtedness before the making of such payment.

3. **ALTERATIONS, DEMOLITION OR REMOVAL.** No building, structure, other improvement, fixture or equipment or other personal property constituting any portion of the Premises shall be removed, demolished or substantially altered without the prior written consent of Mortgagee.

4. **WASTE AND CHANGE IN USE.** No Mortgagor shall commit any waste on the Premises or make any change in the use of the Premises which may in any way increase any ordinary fire, environmental or other risk arising out of construction or operation.

5. **MAINTENANCE AND REPAIRS.** Mortgagor shall keep and maintain all buildings, structures, other improvements, fixtures and equipment and other personal property constituting any portion of the Premises and the sidewalks and curbs abutting the Premises in good order and rentable and tenantable condition and state of repair. In the event that the Premises or any portion thereof shall be damaged or destroyed by fire or any other casualty, or in the event of the condemnation or taking of any portion of the Premises as a result of any exercise of the power of eminent domain, Mortgagor shall promptly restore, replace, rebuild or alter the same as nearly as possible to the condition immediately prior to such fire, other casualty, condemnation or taking without regard to the adequacy of any proceeds of any insurance or award received. Mortgagor shall give prompt written notice to Mortgagee of any such damage or destruction or of the commencement of any condemnation or eminent domain proceeding affecting the Premises or any portion thereof.

6. **EXISTENCE AND AUTHORITY.** Mortgagor represents and warrants, and continues to represent and warrant as long as this Mortgage is in effect, as follows: (a) If Mortgagor is not a natural person (*e.g.*, corporation, partnership, limited liability company, etc.), it is duly organized, validly existing and in good standing under the laws of the above-named state of organization and will do all things necessary to preserve and keep in full force and effect the existence, franchises, rights and privileges of Mortgagor as the type of business entity it was as of the date of this Mortgage, under the laws of the state of its organization; (b) Mortgagor has the full power and authority to grant the mortgage lien hereunder and to execute, deliver and perform its obligations in accordance with this Mortgage; (c) the execution and delivery of this Mortgage will not (i) violate any applicable law of any governmental authority or any judgment or order of any court, other governmental authority or arbitrator; (ii) violate any agreement to which Mortgagor is a party; or (iii) result in a lien or encumbrance on any of its assets (other than the mortgage lien hereunder); (d) Mortgagor's certificate of incorporation, by-laws, partnership agreement, articles of organization or other organizational or governing documents ("Governing Documents") do not prohibit any term or condition of this Mortgage; (d) each authorization, approval or consent from, each registration and filing with, each declaration and notice to, and each other act by or relating to, any party required as a condition of Mortgagor's execution, delivery or performance of this Mortgage (including any shareholder or board of directors or similar approvals) has been duly obtained and is in full force and effect and no other action is required under its Governing Documents or otherwise; and (e) Mortgagor has the power and authority to transact the business in which it is engaged and is duly licensed or qualified and in good standing in each jurisdiction in which the conduct of its business or ownership of property requires such licensing or such qualifications.

 © M&T Bank, 2019

7. **TAXES AND ASSESSMENTS**. Unless paid from an escrow established pursuant to Section 8 of this Mortgage, Mortgagor shall pay all taxes, general and special assessments and other governmental impositions with respect to the Premises before the end of any applicable grace period. Upon request by Mortgagee, Mortgagor shall promptly deliver to Mortgagee receipted bills showing payment of all such taxes, assessments and impositions within the applicable grace period.

8. **ESCROW FOR TAXES, ASSESSMENTS AND INSURANCE.** Upon request by Mortgagee, Mortgagor shall pay (a) monthly to Mortgagee on or before the first day of each and every calendar month, until the Indebtedness is fully paid, a sum equal to one-twelfth (1/12th) of the yearly taxes, general and special assessments, other governmental impositions and other liens and charges with respect to the Premises to be imposed for the ensuing year, as estimated by Mortgagee in good faith, and annual premiums for insurance on the Premises and (b) an initial payment such that, when such monthly payments are added thereto, the total of such payments will be sufficient to pay such taxes, assessments, impositions and other liens and charges and such insurance premiums on or before the date when they become due. Absent manifest error, Mortgagee's calculation as to the amount to be paid into Escrow shall be deemed conclusive. So long as no Event of Default (as hereinafter defined) shall have occurred or exists, Mortgagee shall hold such payments in trust in an account maintained with Mortgagee without obligation to pay interest thereon, except such interest as may be mandatory by any applicable statute, regulation or other law, to pay, to the extent funds are available, such taxes, assessments, impositions and other liens and charges and such insurance premiums within a reasonable time after they become due; provided, however, that upon the occurrence or existence of any Event of Default, Mortgagee may apply the balance of any such payments held to the Indebtedness. If the total of such payments made by any Mortgagor shall exceed the amount of such payments made by Mortgagee, such excess shall be held or credited by Mortgagee for the benefit of Mortgagor. If the total of such payments made by any Mortgagor shall be less than the amount of such taxes, assessments, impositions and other liens and charges and such insurance premiums, then Mortgagor shall pay to Mortgagee any amount necessary to make up the deficiency on or before the date when any such amount shall be due.

9. **LEASES.** Pursuant to Section 291-f of the New York Real Property Law, Mortgagor shall not (a) amend, cancel, abridge, terminate, or otherwise modify any lease of the Premises or of any portion thereof or (b) accept any prepayment of installments of rent to become due thereunder for more than one month in advance, without the prior written consent of Mortgagee. No Mortgagor shall make any new lease in place of or any lease renewal or extension of any lease of the Premises or any portion thereof (other than those that Mortgagor as landlord may be required to grant by the terms of an existing lease) without the prior written consent of Mortgagee. Upon request by Mortgagee, Mortgagor shall promptly furnish to Mortgagee a written statement containing the names and mailing addresses of all lessees of the Premises or of any portion thereof, the terms of their respective leases, the space occupied and the rentals payable thereunder and copies of their respective leases and shall cooperate in effecting delivery of notice of this covenant to each affected lessee.

10. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor hereby assigns to Mortgagee all existing and future leases of the Premises or any portion thereof (including any amendments, renewals, extensions or modifications thereof) and the rents, issues and profits of the Premises including accounts receivable for use of the Premises for hotel or lodging services ("Accounts"), as further security for the payment of the Indebtedness, and Mortgagor grants to Mortgagee the right to enter upon and to take possession of the Premises for the purpose of collecting the same and to let the Premises or any portion thereof, and after payment of each cost and expense (including each fee and disbursement of counsel to Mortgagee) incurred by Mortgagee in such entry and collection, to apply the remainder of the same to the Indebtedness, without affecting its right to maintain any action theretofore instituted, or to bring any action thereafter, to enforce the payment of the Indebtedness. In the event Mortgagee exercises such rights, it shall not thereby be deemed a mortgagee in possession, and it shall not in any way be made liable for any act or omission. No Mortgagor shall assign such leases, rents, issues or profits or any interest therein or grant any similar rights to any other person without Mortgagee's prior written consent. Mortgagee hereby waives the right to enter upon and to take possession of the Premises for the purpose of collecting said rents, issues and profits, and Mortgagor shall be entitled to collect the same, until the occurrence or existence of any Event of Default, but such right of Mortgagor may be revoked by Mortgagee upon the occurrence or existence of any Event of Default. Upon the occurrence or existence of any Event of Default, Mortgagor shall pay monthly in advance to Mortgagee, or to any receiver appointed to collect said rents, issues and profits, a fair and reasonable monthly rental value for the use and occupation of the Premises, and upon default in any such payment shall vacate and surrender the possession of the Premises to Mortgagee or to such receiver, and in default thereof may be evicted by summary proceedings pursuant to Article 7 of the New York Real Property Actions and Proceedings Law. The rights and remedies under this section and any separately recorded assignment of rents and/or leases in favor of Mortgagee shall be cumulative. In the event of any irreconcilable inconsistencies between such agreements and this section, the separately recorded assignment of rents and/or leases shall control.

11. **SECURITY AGREEMENT.** This Mortgage constitutes a continuing security agreement under the New York Uniform Commercial Code in effect in the State of New York, as amended from time to time (the "UCC") granting a lien and security interest in the Premises, as well as all construction contracts, permits, public works agreements, bonds, deposits and payments, relating or appertaining to the Premises and its development to secure the Indebtedness. Mortgagee shall have the right to file in any public office, without the signature of Mortgagor, any financing statement relating to such items of collateral. Mortgagee shall have each applicable right and remedy of a secured party under the UCC and each applicable right and remedy pursuant to any other law or pursuant to this Mortgage. IT IS INTENDED BY MORTGAGOR AND MORTGAGEE THAT THIS MORTGAGE BE EFFECTIVE AS A FINANCING STATEMENT FILED WITH THE REAL ESTATE RECORDS AS A FIXTURE FILING.

12. **NO TRANSFER.** Mortgagor shall not, without Mortgagee's prior written consent, sell, convey or transfer the Premises or any portion thereof or any interest therein or contract to do so. If any Mortgagor, Debtor or any endorser or guarantor of the Indebtedness (a "Guarantor") is a corporation, or if any other person liable with respect to the Indebtedness or any portion thereof other than Mortgagor or any general partner of Mortgagor, Debtor or any Guarantor, is a corporation, any direct or indirect change in the beneficial ownership or number of issued and outstanding shares of any class of stock of such Mortgagor, Debtor, Guarantor or general partner, whether by operation of law or otherwise, after which the percentage of such shares beneficially owned by any person or group of persons having beneficial ownership of any such shares has changed by at least ten percent (10%) more or less than it was on the date of this Mortgage shall be deemed a sale, conveyance or transfer of the Premises within the meaning of this Section 12. If any Mortgagor, Debtor or Guarantor is a partnership, including a limited liability partnership, any change in the partnership interests of the general partners of such Mortgagor, Debtor or Guarantor or in the composition of the general partners of such Mortgagor, Debtor or Guarantor,

whether by operation of law or otherwise, shall be deemed a sale, conveyance or transfer of the Premises within the meaning of this Section 12. If any Mortgagor, Debtor or Guarantor is a limited liability company, any change in the direct or indirect membership interest of any member or class of members of such Mortgagor, Debtor or Guarantor, whether by operation of law or otherwise, after which the percentage of such membership interest owned by any such member or class has changed by at least ten percent (10%) more or less than it was on the date of this Mortgage shall be deemed a sale, conveyance or transfer of the Premises within the meaning of this Section 12.

**13. NO SECONDARY FINANCING OR OTHER LIENS.** Mortgagor shall not, without Mortgagee's prior written consent, mortgage, pledge, assign, grant a security interest in or cause any other lien or encumbrance to be made or permit any other lien or encumbrance to exist upon the Premises or any portion thereof except for (a) taxes and assessments not yet delinquent and (b) any mortgage, pledge, security interest, assignment or other lien or encumbrance to Mortgagee or any affiliate of Mortgagee (an "Affiliate").

**14. COMPLIANCE WITH LAWS.** Mortgagor represents and warrants to Mortgagee, and continues to represent and warrant as long as this Mortgage is in effect, as follows: (a) the buildings, structures and other improvements now constituting any portion of the Premises are in full compliance with all applicable statutes, regulations and other laws (including all applicable zoning, building, fire and health codes and ordinances and the Americans With Disabilities Act of 1990, as amended) and all applicable deed restrictions, if any, and is not and shall not be used for any illegal purpose; (b) such compliance is based solely upon Mortgagor's ownership of the Premises and not upon title to or interest in any other property. Mortgagor shall comply with or cause compliance with all statutes, regulations and other laws (including all applicable zoning, building, fire and health codes and ordinances and the Americans With Disabilities Act of 1990, as amended), all other requirements of all governmental authorities whatsoever having jurisdiction over or with respect to the Premises or any portion thereof or the use or occupation thereof and with all applicable deed restrictions, if any; provided, however, that Mortgagor may postpone such compliance if and so long as the validity or legality of any such requirement or restriction shall be contested by such Mortgagor, with diligence and in good faith, by appropriate legal proceedings and Mortgagee is satisfied that such non-compliance will not impair or adversely affect the value of its security.

**15. WARRANTY OF TITLE; TITLE INSURANCE.** Mortgagor represents and warrants to Mortgagee, and continues to represent and warrant as long as this Mortgage is in effect, that Mortgagor holds good and marketable title in fee simple absolute to the Premises. Upon request by Mortgagee, Mortgagor shall furnish to Mortgagee at Mortgagor's own cost and expense a title insurance policy in the then amount of the Indebtedness, (a) naming Mortgagee as mortgagee, (b) covering the lien on the Premises granted pursuant to this Mortgage, (c) containing no exception not approved by Mortgagee, (d) issued by a title insurance company qualified to do business in the State of New York and satisfactory to Mortgagee and (e) otherwise in form and substance satisfactory to Mortgagee.

**16. CERTAIN RIGHTS AND OBLIGATIONS.**

(a) Mortgagee may take such action as Mortgagee deems appropriate to protect the Premises, its value, or the status or priority of the lien of this Mortgage, including, without limitation: entry upon the Premises to conduct appraisals or other valuations of the Premises, or to protect the Premises from deterioration or damage, or to cause the Premises to be put in compliance with any governmental, insurance rating or contract requirements; payment of amounts due on liens having priority over this Mortgage; payment of any tax or charge for purposes of assuring the priority or enforceability of this Mortgage; obtaining and/or taking such action so as to maintain uninterrupted insurance on the Premises (including flood insurance); or commencement or defense of any legal action or proceeding to assess or protect the validity or priority of the lien of this Mortgage. On demand, Mortgagor shall reimburse Mortgagee for all expenses in taking any such action, with interest, and the amount thereof shall be secured by this Mortgage and shall, to the extent permitted by law, be in addition to the maximum amount of the Indebtedness evidenced by the Note.

(b) Mortgagor authorizes Mortgagee, without notice, demand or any reservation of rights and without affecting this Mortgage, from time to time: (i) to accept from any person or entity and hold additional collateral for the payment of the Indebtedness or any part thereof, and to exchange, enforce or refrain from enforcing, or release such collateral or any part thereof; (ii) to accept and hold any endorsement or guaranty of payment of the Indebtedness or any part thereof, and to release or substitute any such obligation of any such Guarantor or any person or entity who has given any collateral as security for the payment of the Indebtedness or any part thereof, or any other person or entity in any way obligated to pay the Indebtedness or any part thereof, and to enforce or refrain from enforcing, or compromise or modify, the terms of any obligation of any such Guarantor, person or entity; (iii) upon the occurrence of an Event of Default, to direct the order or manner of the disposition of any and all collateral and the enforcement of any and all endorsements and guaranties relating to the Indebtedness or any part thereof as Mortgagee, in its sole discretion, may determine; and (iv) upon the occurrence of an Event of Default to determine the manner, amount and time of application of payments and credits, if any, to be made on all or any part of any component or components of the Indebtedness (whether principal, interest, costs and expenses, or otherwise) including if the amount of the Indebtedness secured by this Mortgage is less than the total amount of the obligations under the Note or the Guaranty, to make any such application to such obligations, if any, in excess of the amount of the Indebtedness secured by this Mortgage.

(c) Notwithstanding the occurrence of an Event of Default, this Mortgage shall remain valid, binding and enforceable: (i) without deduction by reason of any setoff, defense or counterclaim of Mortgagor, Guarantor or Debtor, (ii) without requiring protest or notice of nonpayment or notice of default to Mortgagor, to Guarantor, to Debtor, or to any other person; (iii) without demand for payment or proof of such demand; (iv) without requiring Mortgagee to resort first to Mortgagor or to any other guaranty or any collateral which Mortgagee may hold; (v) without requiring notice of acceptance hereof or assent hereto by Mortgagee; and (vi) without requiring notice that any indebtedness has been incurred or of the reliance by Mortgagee upon this Mortgage; all of which Mortgagor hereby waives.

(d) The enforceability of this Mortgage shall not be affected by: (i) any failure to perfect or continue the perfection of any security interest in or other lien on any other collateral securing payment of the Indebtedness; (ii) the invalidity, unenforceability, or loss or change in priority of any such security interest or other lien; (iii) any failure to protect, preserve or insure any such collateral; (iv) any defense arising by reason of the cessation from any cause whatsoever of liability of Debtor or any Guarantor; (v) any compromise of any obligation of Mortgagor, Debtor or any Guarantor; (vi) the invalidity or


© M&T Bank, 2019

unenforceability of any of the Indebtedness; or (vii) any renewal, extension, acceleration, or other change in the time for payment of, or the terms of the interest on the Indebtedness or any part thereof; all of which Mortgagor hereby waives.

(e) If Mortgagee shall receive from or on behalf of Mortgagor any sum less than the full amount then due and payable, Mortgagee may, but shall not be obligated to, accept the same and, if it elects to accept any such payment, it may without waiving any Event of Default: (i) apply such payment on account of the Indebtedness or any amount payable hereunder, or (ii) hold same or any part thereof, without liability for interest, in a special account and from time to time apply same or any part thereof as specified in subsection (i) of this subsection.

17. **LIEN LAW COVENANT.** Mortgagor shall receive the advances secured by this Mortgage and shall hold the right to receive such advances as a trust fund in accordance with the provisions of Section 13 of the New York Lien Law.

18. **APPLICATION OF AND INTEREST ON CONDEMNATION AWARD.** Mortgagor consents that Mortgagee may retain and apply the proceeds of any award by a condemning authority in satisfaction or reduction of the Indebtedness, whether or not then due and payable, or it may pay the same, wholly or in part, to Mortgagor for the restoration or alteration of the Premises or for any other purpose satisfactory to Mortgagee, without affecting the lien of this Mortgage for the full amount of the Indebtedness before the making of such payment. In the event of the condemnation or taking by eminent domain of the Premises or any portion thereof, Mortgagee shall not be limited to the interest paid on the award by the condemning authority, but shall be entitled to receive out of the award interest on the Indebtedness in accordance with its terms.

19. **APPOINTMENT OF RECEIVER.** In addition to any other remedy, upon the occurrence of any Event of Default, Mortgagee, in any action to foreclose this Mortgage, shall be entitled, without notice or demand and without regard to the adequacy of any security for the Indebtedness or the solvency or insolvency of any person liable for the payment thereof, to the appointment of a receiver of the rents, issues and profits of the Premises.

20. **SALE IN ONE OR MORE PARCELS.** In case of a foreclosure sale, the Premises may be sold in one or more parcels, any provision of any statute, regulation or other law to the contrary notwithstanding.

21. **ESTOPPEL STATEMENT.** Upon request by Mortgagee, Mortgagor shall furnish to Mortgagee within five (5) days if such request is made in person or within ten (10) days if such request is otherwise made a written statement duly acknowledged of the amount of the Indebtedness and whether any offsets or defenses exist against the Indebtedness.

22. **RIGHT TO INSPECT AND EXAMINE.** Upon request by Mortgagee, Mortgagor shall immediately permit Mortgagee and each officer, employee, accountant, attorney and other agent of Mortgagee to enter and inspect the Premises and to examine, audit, copy and extract each record of any Mortgagor relating to the Premises or any portion thereof.

23. **FINANCIAL STATEMENTS.** Mortgagor shall provide, shall cause each Guarantor and Debtor to provide, and shall use its best efforts to cause each lessee of the Premises or any material portion thereof (a "Material Lessee") to provide, to Mortgagee, in form satisfactory to Mortgagee, promptly upon request by Mortgagee, all information relating to such Mortgagor, Guarantor, Debtor or Material Lessee or to such Mortgagor's, Guarantor's, Debtor's or Material Lessee's business, operations, assets, affairs or condition (financial or otherwise) or to the Premises or any portion thereof that is so requested. Without limiting the generality of the preceding sentence, Mortgagor shall so provide (a) if such Mortgagor is a natural person, at least once during each period of twelve (12) consecutive months, a personal financial statement of such Mortgagor for a year ending not more than sixty (60) days earlier, in reasonable detail and certified by such Mortgagor to be complete and accurate and (b) if such Mortgagor is not an individual, (i) promptly copies of all annual reports, proxy statements and similar information distributed to shareholders, partners or other owners and of all filings with the Securities and Exchange Commission and the Pension Benefit Guaranty Corporation, (ii) within sixty (60) days after the end of each of its first three fiscal quarters, consolidating and consolidated statements of income and cash flows for the quarter, for the corresponding quarter in the previous fiscal year and for the period from the end of the previous fiscal year, with a consolidating and consolidated balance sheet as of the quarter end, (iii) within ninety (90) days after the end of each fiscal year, consolidating and consolidated statements of such Mortgagor's income and cash flows and its consolidating and consolidated balance sheet as of the end of such fiscal year, setting forth comparative figures for the preceding fiscal year and to be ☐ **audited** ☐ **reviewed** ☐ **compiled** (check appropriate box. If no box is selected, all financial statements shall be audited) by an independent certified public accountant acceptable to Mortgagee, all such statements to be certified by such Mortgagor's chief financial officer or partner to be correct and in accordance with such Mortgagor's records and to present fairly the results of such Mortgagor's operations and cash flows and its financial position at year end in conformity with generally accepted accounting principles, and (iv) with each statement of income, a certificate executed by such Mortgagor's chief executive and chief financial officers or managing partners or members (A) stating that the signers of the certificate have reviewed this Mortgage and the operations and condition (financial or other) of such Mortgagor and any subsidiaries during the relevant period and (B) stating that no Event of Default occurred during the period, or if an Event of Default did occur, describing its nature, the date(s) of its occurrence or period of existence and what action Mortgagor has taken with respect thereto.

24. **AUTHORIZATION AND POWER OF ATTORNEY.** Mortgagee is irrevocably and unconditionally authorized to take, and Mortgagor irrevocably and unconditionally appoints Mortgagee as the attorney-in-fact of such Mortgagor, with full power of substitution and of revocation, to take, in the name of such Mortgagor or otherwise at the sole option of Mortgagee, each action relating to the Premises or any portion thereof that, subject to this Mortgage, such Mortgagor could take in the same manner, to the same extent and with the same effect as if such Mortgagor were to take such action; provided, however, that Mortgagee shall not have the right, pursuant to such authorization or as such attorney-in-fact, to sell or otherwise dispose of the Premises or any portion thereof. Such power of attorney is coupled with an interest in favor of Mortgagee, and shall not be terminated or otherwise affected by the death, disability or incompetence of any Mortgagor.

25. **FURTHER ASSURANCES.** The Mortgagor shall, and shall cause its affiliates to take such action and execute and deliver to the Mortgagee such additional documents, instruments, certificates, and agreements as the Mortgagee may reasonably request from time to time to effectuate the purposes and intent of the transaction(s) contemplated hereby, including, without limitation, causing any affiliate, entity or series of entities it may create hereafter through merger, division


© M&T Bank, 2019

or otherwise, to execute agreements, in form and substance acceptable to the Mortgagee, (i) assuming or guarantying the Mortgagor's obligations under this Mortgage and all related agreements and (ii) pledging assets to the Mortgagee to the same extent as the Mortgagor.

26. ENVIRONMENTAL REPRESENTATIONS, WARRANTIES AND INDEMNIFICATION. Mortgagor represents and warrants, and continues to represent and warrant as long as this Mortgage is in effect, to Mortgagee that (a) Mortgagor and the Premises are in compliance with each statute, regulation or other law and each judgment, order or award of any court, agency or other governmental authority or of any arbitrator (individually an "Environmental Requirement") relating to the protection of any water, water vapor, land surface or subsurface, air, fish, wildlife, biota or other natural resources or governing the use, storage, treatment, generation, transportation, processing, handling, production or disposal of any chemical, natural or synthetic substance, waste, pollutant or contaminant (collectively "Regulated Materials"), (b) Mortgagor has not been charged with, or has received any notice that such Mortgagor is under investigation for, the failure to comply with any Environmental Requirement, nor has Mortgagor received any notice that Mortgagor has or may have any liability or responsibility under any Environmental Requirement with respect to the Premises or otherwise, (c) the Premises have never been used for (i) the storage, treatment, generation, transportation, processing, handling, production or disposal of Regulated Materials, except as permitted by law, (ii) a landfill or other waste disposal site or (iii) military purposes, (d) no underground storage tanks are located on the Premises, (e) the environmental media at the Premises do not contain Regulated Materials beyond any legally permitted level, (f) there has never been any release, threatened release, migration or uncontrolled presence of any Regulated Materials on, at or from the Premises or, to the knowledge of Mortgagor, within the immediate vicinity of the Premises and (g) Mortgagor has not received any notice of any such release, threatened release, migration or uncontrolled presence. Mortgagor shall not cause or permit the Premises to be used in any way that would result in any of the representations and warranties contained in the preceding sentence to be false or misleading at any future time. To the extent any such representation or warranty at any time is or becomes false or misleading, Mortgagor shall promptly notify Mortgagee thereof. If at any time Mortgagor obtains any evidence or information which suggests that potential environmental problems may exist on, at or about the Premises, Mortgagee may request Mortgagor, at Mortgagor's own cost and expense, to conduct and complete investigations, studies, sampling and testing with respect to the Premises requested by Mortgagee. Mortgagor shall promptly furnish to Mortgagee copies of all such investigations, studies, samplings and tests. Mortgagor shall (a) conduct and complete all such investigations, studies, samplings and testing, and all remedial, removal and other actions necessary with respect to the Premises, in accordance with all applicable Environmental Requirements and promptly furnish to Mortgagee copies of all documents generated in connection therewith and (b) defend, reimburse, indemnify and hold harmless Mortgagee, its employees, agents, officers and directors, from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs or expenses of whatever kind or nature, known or unknown, contingent or otherwise, arising out of, or in any way related to, the violation of, or other liability or responsibility under, any Environmental Requirements, or the release, threatened release, migration or uncontrolled presence of any Regulated Materials on, at or from the Premises including attorney and consultant fees, investigation and laboratory fees, court costs and litigation expenses. In the event this Mortgage is foreclosed, or Mortgagor tenders a deed in lieu of foreclosure which Mortgagee agrees to accept, Mortgagor shall be responsible to deliver the Premises to Mortgagee free of any and all Regulated Materials other than any that are (a) normally used in Mortgagor's business and (b) located and maintained thereon in compliance with all applicable Environmental Requirements and in a condition that conforms with all applicable Environmental Requirements. The provisions of this Section 26 shall be in addition to any and all other obligations and liabilities Mortgagor may have to Mortgagee at common law or any other agreement with Mortgagee, and shall survive the transactions contemplated in this Mortgage and the termination of this Mortgage.

27. EVENTS OF DEFAULT.

(a) The following constitute an event of default ("Event of Default"): (i) failure by Debtor (if Mortgagor and Debtor are not the same) or Mortgagor to make any payment when due (whether at the stated maturity, by acceleration or otherwise) of the Indebtedness, or any part thereof, or there occurs any event or condition which after notice, lapse of time or both will permit such acceleration; (ii) Mortgagor defaults in the performance of any covenant, term, condition or other provision of this Mortgage or any other agreement between Mortgagee and Mortgagor or any of its affiliates or subsidiaries (collectively, "Affiliates"); (iii) Mortgagor fails to pay when due (whether at the stated maturity, by acceleration or otherwise) any indebtedness for borrowed money owing to the Mortgagee (other than related this Mortgage), any third party or Affiliate or the occurrence of any event which could result in acceleration of payment of any such indebtedness or the failure to perform any agreement with any third party or Affiliate; (iv) the sale, assignment transfer or delivery, by operation of law or otherwise, of all or substantially all of the assets of the Mortgagor to a third party; (v) a non-individual Mortgagor, without the Mortgagee's prior written consent, engages in, agrees to or approves a plan for (a) reorganization, (b) merger or consolidation, (c) division into (or of) one or more entities or series of entities or allocation or transfer of any of Mortgagor's assets or liabilities as a result of such a division, (d) conversion to another form of business entity, or (e) dissolution of Mortgagor or cessation by Mortgagor as a going business concern; (vi) the death or judicial declaration of incompetency of Mortgagor, if an individual; (vii) failure to pay, withhold or collect any tax as required by law; the service or filing against Mortgagor or any of its assets of any lien (other than a lien permitted in writing by the Mortgagee), judgment, garnishment, order or award; (viii) if Mortgagor becomes insolvent or is generally not paying its debts as such debts become due; (ix) the making of any general assignment by Mortgagor for the benefit of creditors; the appointment of a receiver or similar trustee for Mortgagor, the Premises or Mortgagor's assets; or the making of any, or sending notice of any intended, bulk sale; (x) Mortgagor commences (or has commenced against it and not dismissed or stayed within forty-five (45) days) any proceeding or request for relief under any bankruptcy, insolvency or similar laws now or hereafter in effect in the United States of America or any state or territory thereof or any foreign jurisdiction or any formal or informal proceeding for the dissolution or liquidation of, settlement of claims against or winding up of affairs of Mortgagor; (xi) any representation or warranty made in this Mortgage, any related document, any agreement between Mortgagor and the Mortgagee or any Affiliate or in any financial statement of Mortgagor or elsewhere was misleading in any material respect when made; Mortgagor omits to state a material fact necessary to make the statements made in this Mortgage, any related document, any agreement between Mortgagor and the Mortgagee or any Affiliate or any financial statement of Mortgagor or elsewhere not misleading in light of the circumstances in which they were made; or, if upon the date of execution of this Mortgage, there shall have been any material adverse change in any of the facts disclosed in any financial statement, representation, warranty or elsewhere that was not disclosed in writing to the Mortgagee at or prior to the time of execution hereof; (xii) any pension plan of Mortgagor fails to comply with applicable law or has vested unfunded liabilities that, in the opinion of the Mortgagee, might have a material adverse effect on Mortgagor's ability to repay its debts; (xiii) an adverse change in the Mortgagor, its business,

 © M&T Bank, 2019

assets, operations, management, ownership, affairs or condition (financial or otherwise) or the Premises or the Mortgagee's collateral from the status shown on any financial statement or other document submitted to the Mortgagee or any Affiliate, and which change the Mortgagee determines will have a material adverse effect on (a) the Mortgagor, its business, assets, operations or condition (financial or otherwise), (b) the Premises, or (c) the ability of the Mortgagor to pay or perform any obligation to the Mortgagee; (xiv) any indication or evidence received by the Mortgagee that the Mortgagor may have directly or indirectly engaged in any type of activity which, in the Mortgagee's discretion, might result in the forfeiture of any property of the Mortgagor to any governmental authority; (xv) the occurrence of any event described in sub-paragraph (i) through and including (xiv) hereof with respect to any guarantor, Debtor (if Mortgagor and Debtor are not the same) or any other party liable for, or whose assets or any interest therein secures, payment of any of the amounts secured by this Mortgage; (xvi) Mortgagor fails to supply new or additional collateral within ten (10) days of request by the Mortgagee; or (xvii) the Mortgagee believes in good faith the Indebtedness or performance of Mortgagor's or Debtor's obligations under this Mortgage or any other agreement now or hereafter in effect between Mortgagor, Debtor or Guarantor and Mortgagee or its Affiliates is impaired.

(b) Mortgagee, at its sole election, may declare all or any part of any Indebtedness not payable on demand to be immediately due and payable without demand or notice of any kind upon the happening of any Event of Default. All or any part of any Indebtedness not payable on demand shall be automatically and immediately due and payable, without demand or notice of any kind, upon the commencement of Mortgagor's or Debtor's bankruptcy if voluntary and upon the lapse of forty-five (45) days without dismissal if involuntary, unless an order for relief is entered sooner. The provisions of this paragraph are not intended in any way to affect any rights of Mortgagee with respect to any Indebtedness which may now or hereafter be payable on demand.

(c) Upon the happening of an Event of Default, whether or not foreclosure proceedings have been instituted, Mortgagor shall, upon demand, surrender possession of the Premises to Mortgagee. If Mortgagor remains in possession of the Premises after the happening of an Event of Default and demand by Mortgagee, the possession shall be as tenant of Mortgagee and Mortgagor agrees to pay in advance upon demand to Mortgagee a reasonable monthly rental for the Premises or portion so occupied. Mortgagee may dispossess, by summary proceedings or otherwise, any tenant of Mortgagor defaulting in the payment of rent. If a receiver is appointed, this covenant shall inure to the benefit of such receiver. Notwithstanding any provision of law to the contrary, Mortgagee may, at its option, foreclose this Mortgage subject to the rights of tenants of the Premises which are subordinate to the lien of this Mortgage.

(d) If the Indebtedness, as evidenced by a single note or other written instrument shall exceed the amount secured by this Mortgage, or as evidenced by a combination of same that singularly or in part collectively may be less than said secured amount but combined exceed said secured amount, Mortgagee, in any foreclosure hereof, shall have the right to sue and collect the excess in the same action as commenced for the foreclosure hereof, and recover a money judgment for said excess with all the rights attendant thereto, including the issuance of an execution to the Sheriff for collection thereof, and Mortgagor hereby waives any defense based upon a claim that in doing so, Mortgagee is splitting its cause of action if it seeks to foreclose this Mortgage for part of the Indebtedness and recover at law for another part.

(e) Upon the happening of an Event of Default, Mortgagee may pursue, take or refrain from pursuing any remedy for collection of the Indebtedness, including foreclosure of this Mortgage.

(f) Mortgagee may, either with or without entry or taking possession of the Premises as provided in this Mortgage or otherwise, personally or by its agents or attorneys, and without prejudice to the right to bring an action of foreclosure of this Mortgage, take such steps to protect and enforce its rights whether by action, suit or proceeding in equity or at law for the specific performance of any covenant, condition or agreement in the Note, the Mortgage, the Guaranty, or in aid of the execution of any power granted in this Mortgage, or for any foreclosure under this Mortgage, or for the enforcement of any other appropriate legal or equitable remedy or otherwise as Mortgagee may elect. Any reference in this Mortgage to an action or right of Mortgagee in regard to or in connection with a "foreclosure proceeding" shall be deemed to include a proceeding under this subsection.

28. **EXPENSES.** Mortgagor shall pay to Mortgagee on demand all costs and expenses (including attorneys' fees and disbursements whether for internal or outside counsel) incurred by Mortgagee in connection with the Indebtedness or the Mortgage including costs of collection, of preserving or exercising any right or remedy of Mortgagee under this Mortgage or any related security agreement or guaranty, of workout or bankruptcy proceedings by or against Mortgagor, of defending against any claim asserted as a direct or indirect result of the Indebtedness, of any appraisal required by the Mortgagee or of performing any obligation of any Mortgagor pursuant to this Mortgage or otherwise (including payment of any amount any Mortgagor is obligated to pay pursuant to this Mortgage and performance of any obligation of Mortgagor pursuant to this Mortgage). Mortgagor agrees to defend and indemnify Mortgagee from any and all third party claims arising from Mortgagor's duties as owner and/or occupant of the Premises, and further agrees to pay, upon demand, any expense that Mortgagee may incur (including attorneys' fees and disbursements whether for internal or outside counsel) due to Mortgagor's failure to provide appropriate defense and indemnification to Mortgagee in a timely manner. Mortgagee reserves the right to have Mortgagor pay, upon demand, administrative fee(s) in regard to any administrative action Mortgagee is required or requested to take including the preparation of discharges, releases or assignments to third parties. Costs and expenses shall accrue interest at the default rate set forth in the Note from the date of demand until payment is actually received by Mortgagee. Each such cost and expense and any interest thereon shall constitute part of the Indebtedness and be secured by this Mortgage and may be added to the judgment in any suit brought by Mortgagee or its agents against any Mortgagor on this Mortgage.

29. **NOTICES.** Any demand or notice hereunder or under any applicable law pertaining hereto shall be in writing and duly given if delivered to Mortgagor (at its address on Mortgagee's records) or to Mortgagee (at the address on page one and separately to Mortgagee officer responsible for Mortgagor's relationship with Mortgagee). Such notice or demand shall be deemed sufficiently given for all purposes when delivered (i) by personal service and shall be deemed effective when delivered, or (ii) by mail or courier and shall be deemed effective three (3) business days after deposit in an official depository maintained by the United States Post Office for the collection of mail or one (1) business day after delivery to a nationally recognized overnight courier service (*e.g.*, Federal Express). Notice by e-mail is not valid notice under this or any other agreement between Mortgagor and Mortgagee.


© M&T Bank, 2019

**30. LITIGATION.** Mortgagor shall promptly notify Mortgagee in writing of any litigation, proceeding, or counterclaim against, or of any investigation of, Mortgagor (or the threat thereof) if: (i) the outcome of such litigation, proceeding, counterclaim, or investigation may materially and adversely affect the finances or operations of Mortgagor or title to, or the value of, any assets secured by the Mortgage or (ii) such litigation, proceeding, counterclaim, or investigation questions the validity of the Note, the Mortgage, the Guaranty or any document executed in connection therewith including any guaranties or any action taken, or to be taken, pursuant to any such documents. Mortgagor shall furnish to Mortgagee such information regarding any such litigation, proceeding, counterclaim, or investigation as Mortgagee shall request.

**31. NOTICE OF NON-COMPLIANCE.** Mortgagor shall notify Mortgagee in writing of any failure by Mortgagor to comply with any provision of the Note, the Mortgage, the Guaranty or any document executed in connection therewith immediately upon learning of such non-compliance, or if any representation, warranty or covenant contained in any such document is no longer true. Mortgagor shall also immediately notify Mortgagee in writing if there is any material adverse change in any of the information or financial statements supplied to Mortgagee to induce Mortgagee to extend credit to Mortgagor or if such information or financial statement is required under this Mortgage or any other document executed in connection therewith.

**32. COVENANTS SHALL RUN WITH THE LAND.** The covenants contained in this Mortgage shall run with the land and bind Mortgagor, each heir, legal representative, successor and assign of Mortgagor and each subsequent owner, encumbrancer, tenant and subtenant of the Premises or any portion thereof, and shall inure to the benefit of, and be enforceable by, Mortgagee and each successor and assign of Mortgagee.

**33. NONWAIVER BY MORTGAGEE.** All rights and remedies of Mortgagee under this Mortgage and its other agreements with Mortgagor are cumulative, and no right or remedy shall be exclusive of any other right or remedy. No single, partial or delayed exercise by Mortgagee or its agents of any right or remedy shall preclude full and timely exercise by Mortgagee or its agents at any time of any right or remedy of Mortgagee without notice or demand, at Mortgagee's sole option. No course of dealing or other conduct, no oral agreement or representation made by Mortgagee or its agents or usage of trade shall operate as a waiver of any right or remedy of Mortgagee. No waiver of any right or remedy of Mortgagee hereunder shall be effective unless made specifically in writing by Mortgagee. No notice or demand on Mortgagor, Debtor or Guarantor in any case shall entitle Mortgagor, Debtor or Guarantor to any other or further notice in similar or other circumstances.

**34. RIGHT OF SETOFF.** If an Event of Default occurs, Mortgagee and Affiliates shall also have the right to setoff against the Indebtedness any property held in a deposit or other account or otherwise owing by Mortgagee or Affiliates including, in any capacity to any Mortgagor, Debtor or Guarantor in any capacity whether or not the Indebtedness or the obligation to pay such moneys owed by Mortgagee is then due, and Mortgagee shall be deemed to have exercised such right of setoff immediately at the time of such election.

**35. TERM; SURVIVAL.** The term of this Mortgage and Mortgagor's obligations hereunder shall continue until the Indebtedness has been fully paid to Mortgagee's satisfaction. Mortgagor's obligation to pay the costs and expenses hereunder shall survive the term of this Mortgage and the entry of any judgment of foreclosure. Mortgagor's representations, warranties, covenants and agreements shall survive during the term of this Mortgage and shall be presumed to have been relied upon by Mortgagee. If after receipt of any payment of all or any part of the Indebtedness, Mortgagee is for any reason compelled to surrender such payment to any person or entity because such payment is determined to be void or voidable as a preference, impermissible set-off, or a diversion of trust funds, or for any other reason, then the Indebtedness shall not be deemed to be fully paid, and this Mortgage shall continue in full force notwithstanding any contrary action which may have been taken by Mortgagee in reliance upon such payment, and any such contrary action so taken shall be without prejudice to Mortgagee's rights under this Mortgage and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

**36. USA PATRIOT ACT NOTICE.** Mortgagee hereby notifies the Mortgagor that pursuant to the requirements of the USA PATRIOT Act ("Patriot Act"), it is required to obtain, verify and record information that identifies the Mortgagor, which information includes the name and address of the Mortgagor and other information that will allow Mortgagee to identify the Mortgagor in accordance with the Patriot Act. The Mortgagor agrees to, promptly following a request by Mortgagee, provide all such other documentation and information that Mortgagee requests in order to comply with its ongoing obligations under applicable "know your customer" and anti-money laundering rules and regulations, including the Patriot Act.

**37. MISCELLANEOUS.** This Mortgage is absolute and unconditional. This Mortgage and all documents, including the Note, any Guaranty and any other document required to be executed by Mortgagor, Debtor or Guarantor in connection with the transaction contemplated hereby constitute the entire agreement and understanding between the parties hereto with respect to such transaction and supersedes all prior negotiations, courses of dealing, understandings, and agreements between such parties with respect to such transactions. This Mortgage is a binding obligation enforceable against Mortgagor and its heirs and legal representatives and its successors and assigns and shall inure to the benefit of Mortgagee and its successors and assigns. Any reference herein to "Mortgagee" shall be deemed to include and apply to every subsequent holder of this Mortgage and any reference herein to "Mortgagor", "Debtor" or "Guarantor" shall include; (i) any successor individual or individuals, association, partnership, limited liability company or corporation to which all or substantially all of the business or assets of Debtor, Mortgagor or Guarantor, as the case may be, shall have been transferred; (ii) in the case of a partnership Debtor, Mortgagor or Guarantor (as the case may be) any new partnership which shall have been created by reason of the admission of any new partner or partners therein, or by reason of the dissolution of the existing partnership by voluntary agreement or the death, resignation or other withdrawal of any partner; and (iii) in the case of a corporate or limited liability company, Debtor, Mortgagor or Guarantor (as the case may be) any other entity into or with which Debtor, Mortgagor or Guarantor (as the case may be) shall have been merged, consolidated, reorganized, or absorbed. It is the intent of Mortgagor and Mortgagee that the provisions of this Mortgage, other than those included in the New York statutory form of mortgage, shall be construed as affording to Mortgagee rights additional to, and not exclusive of, the rights conferred under the provisions contained in such statutory form. Unless the context otherwise clearly requires, references to plural includes the singular and references to the singular include the plural; the word "or" has the inclusive meaning represented by the phrase

 © M&T Bank, 2019

"and/or"; the word "including", "includes" and "include" shall be deemed to be followed by the words "without limitation"; and captions or section headings are solely for convenience and not part of the substance of this Mortgage. Any representation, warranty, covenant or agreement herein shall survive execution and delivery of this Mortgage and shall be deemed continuous. Each provision of this Mortgage shall be interpreted as consistent with existing law and shall be deemed amended to the extent necessary to comply with any conflicting law. If any provision nevertheless is held invalid, the other provisions shall remain in effect. Mortgagor agrees that in any legal proceeding, a photocopy of this Mortgage kept in Mortgagee's course of business may be admitted into evidence as an original.

**38. JOINT AND SEVERAL.** If there is more than one Mortgagor, each of them shall be jointly and severally liable for all amounts and obligations which become due or should be performed under this Mortgage and the term "Mortgagor" shall include each as well as all of them.

**39. GOVERNING LAW; JURISDICTION.** This Mortgage has been delivered to and accepted by Mortgagee and will be deemed to be made in the State of New York. This Mortgage will be interpreted in accordance with the laws of the State of New York excluding its conflict of laws rules. **MORTGAGOR HEREBY IRREVOCABLY CONSENTS TO THE EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT IN NEW YORK STATE IN A COUNTY OR JUDICIAL DISTRICT WHERE MORTGAGEE MAINTAINS A BRANCH AND CONSENTS THAT MORTGAGEE MAY EFFECT ANY SERVICE OF PROCESS IN THE MANNER AND AT MORTGAGOR'S ADDRESS SET FORTH ABOVE FOR PROVIDING NOTICE OR DEMAND; PROVIDED THAT NOTHING CONTAINED IN THIS MORTGAGE WILL PREVENT MORTGAGEE FROM BRINGING ANY ACTION, ENFORCING ANY AWARD OR JUDGMENT OR EXERCISING ANY RIGHTS AGAINST MORTGAGOR INDIVIDUALLY, AGAINST ANY SECURITY OR AGAINST ANY PROPERTY OF MORTGAGOR WITHIN ANY OTHER COUNTY, STATE OR OTHER FOREIGN OR DOMESTIC JURISDICTION.** Mortgagor acknowledges and agrees that the venue provided above is the most convenient forum for both Mortgagee and Mortgagor. Mortgagor waives any objection to venue and any objection based on a more convenient forum in any action instituted under this Mortgage.

**40. WAIVER OF JURY TRIAL. MORTGAGOR AND MORTGAGEE HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY EACH WAIVE ANY RIGHT TO TRIAL BY JURY THEY MAY HAVE IN ANY ACTION OR PROCEEDING, IN LAW OR IN EQUITY, IN CONNECTION WITH THIS MORTGAGE OR THE TRANSACTIONS RELATED THERETO. MORTGAGOR REPRESENTS AND WARRANTS THAT NO REPRESENTATIVE OR AGENT OF MORTGAGEE HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT MORTGAGEE WILL NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THIS RIGHT TO JURY TRIAL WAIVER. MORTGAGOR ACKNOWLEDGES THAT MORTGAGEE HAS BEEN INDUCED TO ACCEPT THIS MORTGAGE BY, AMONG OTHER THINGS, THE PROVISIONS OF THIS SECTION.**

**41. ADJUSTABLE INTEREST RATE. The interest rate set forth in the Note secured by this Mortgage is subject to increase and decrease over the term of this Loan based upon a change in the LIBOR Rate.**

**42. AUTHORITY TO EXECUTE. The borrowing of the funds and the execution of this Mortgage has been duly authorized by all of the members of the Mortgagor.**

SIGNATURES FOR THIS DOCUMENT ARE ON THE FOLLOWING PAGE

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

 © M&T Bank, 2019

IN WITNESS WHEREOF, this Mortgage has been duly executed by Mortgagor the day and year first above written.

Hodorowoski Holdings, LLC
MORTGAGOR

By
John L. Hodorowski, Manager

By
Paul C. Hodorowski, Manager

Signature of Witness
La Lecce
Typed Name of Witness

ACKNOWLEDGMENT

STATE OF NEW YORK )
: SS.
COUNTY OF ALBANY )

On the 23 day of September, in the year 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared JOHN L. HODOROWSKI, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

LOUIE LECCE
Notary Public, State of New York
Registration No. 4779216
Qualified in Schenectady County
Commission Expires 10/31/22

ACKNOWLEDGMENT

STATE OF NEW YORK )
: SS.
COUNTY OF ALBANY )

On the 23 day of September, in the year 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared PAUL C. HODOROWSKI, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

LOUIE LECCE
Notary Public, State of New York
Registration No. 4779216
Qualified in Schenectady County
Commission Expires 10/31/22

SCHEDULE "A"

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Bethlehem, County of Albany, New York, bounded and described as follows: Beginning at an iron pipe driven in the ground in the easterly line of the highway leading from Slingerlands to Cedar Hill at the northerly side of the farm road between the premises hereby conveyed and the premises now owned by one Myrtle L. Calvary, and running thence along the division line between these described premises and the lands of Myrtle Calvary, according to a survey made by Leslie C. Sherman, Surveyor, December 13, 1933, S. 78 degrees 51 minutes E 191 feet to a stake near the said line of said farm road; thence N 65 degrees 31 minutes E 301.9 feet to a cross mark cut into a large stone near the northerly line of farm road; thence N 54 degrees 42 minutes E 538.7 feet nearly along said line of said road to a stake; thence N 54 degrees 12 minute E 1256 feet running part of the way along said line of said farm road and the remainder along the center of a ditch and the continuation thereof to an iron pipe driven in the ground in the easterly line of the original farm; thence along said original line of the original farm 62.8 feet to an iron pipe; thence along said original line of farm N 34 degrees 26 minutes 515.9 feet to a flat stone in the northeast corner of the premises as conveyed to William Pomykai by Mary Rice by Warranty Deed dated April 21, 1916, recorded in Book 652 of Deeds, page 69; thence running S 57 degrees 00 minutes W 1304.9 feet to an iron pipe; thence N 45 degrees 31 minutes W 98.4 feet; thence S 52 degrees 23 minutes W 532.9 feet to a boulder at the northwesterly corner of said premises, said point being on the highway leading from Slingerlands to Oak Hill: thence along said highway, S 8 degrees 53 minutes E 199.7 feet; thence S 10 degrees 32 minutes W 251 feet; thence S 6 degrees 58 minutes E 215 feet to an iron pipe the place or point of beginning, containing approximately 30.5 acres, more or less.

Excepting and reserving therefrom those two parcels of land as follows: #1, to wit: All that tract or parcel of land in the Town of Bethlehem, County of Albany and State of New York, for the construction of Elm Avenue and described as follows: Beginning at a point in the division line between lands owned on the north by Town of Bethlehem and lands owned on the south by Frank Decker, said point being 56.78 feet distant easterly, measured at right angles from Station 74 plus 34.76 of the survey base line for the reconstruction of Elm Avenue; thence N 9 degrees 38 minutes 10 seconds W 52.82 feet to a point; thence N 8 degrees 30 minutes W 112.5 feet more or less to a point in the easterly line of Elm Avenue; thence southerly and along the easterly line of Elm Avenue 146 feet more or less to a point in the foresaid division line: thence S 67 degrees 24 minutes E and along said division line 46 feet more or less to the point of beginning, containing 0.08 acres more or less. Bearings given are referred to magnetic needle of October 26, 1934.

Parcel #2, to wit: All that piece or parcel of land in the Town of Bethlehem, County of Albany, and State of New York, for the reconstruction of Elm Avenue and described as follows: Beginning at a point in the division line between lands formerly owned on the north by Katherine Decker and lands owned on the south by the Town of Bethlehem, said point being 56.78 feet distant easterly, measured at right angles, from Station 74 plus 34.76 on the survey base line for the reconstruction of Elm Avenue; thence southerly 11 degrees 50 minutes 25 seconds E 342.89 feet to a point in the easterly line of Elm Avenue; thence in the northerly line of lands now owned by Henry Zdhlshlosk; thence northerly and along the easterly line of Elm Avenue 636 feet more or less to the first mentioned division line; thence south 67 degrees 24 minutes and along said division line 46 feet more or less to the point of beginning, containing 0.62 acres more or less.

This conveyance is made subject to the easement heretofore granted to the New York Power and Light Company and New York Telephone Company, dated July 8, 1928, and recorded in Book 823 of Deeds, at Page 525.

Schedule A 1 of 2

SCHEDULE "A" CONTINUED

Also, all that part or parcel of land situated in the Town of Bethlehem, County of Albany, State of New York, and more particularly described as follows:

Beginning at a point in the center line of the Old Town Road, which point is the most southwesterly corner of a parcel of land acquired by the City of Albany, N.Y., from James H.C. Van Allen as part of the Right of Way for the Water Supply Conduit and shown as Parcel No. 13, of Section No. 5 of Right of Way Maps on file in the office of the Commissioner of Water and Water Supply, City of Albany, N.Y., and runs thence northeasterly along the center line of said road for a distance of 195.30 feet to a point; thence northeasterly along the center line of said Road with an interior angle of 170 deg. 06 min. for a distance of 105.85 feet to a point; thence northeasterly along the center line of said Road with an interior angle of 168 deg. 31 min. for a distance of 139.88 feet to a point; thence northwesterly along the center line of said Road with an interior angle of 162 deg. 11 min. for a distance of 66.20 feet to a point; said point being 40.0 feet perpendicularly distant, measured in a southeasterly direction, from the conduit survey line; thence southwesterly, 40.0 feet perpendicularly distant from and parallel to the said survey line with an interior angle of 48 deg. 20 min. for a distance of 189.7 feet to a point; thence southwesterly 40.0 feet perpendicularly distant from and parallel to said survey line with an interior angle of 181 deg. 31 min. for a distance of 48.72 feet to a point in the easterly boundary line of the new Town Road; thence southwesterly along the easterly boundary line of said Road with an interior angle of 140 deg. 24 min. 30 sec. for a distance of 277.30 feet to a point, said point being in the intersection of the easterly boundary line of the new Town Road and the westerly boundary line of the old Town Road; thence southeasterly with an interior angle of 129 deg. 35 min. 30 sec. for a distance of 16.28 feet to the center line of the old Town Road, at the point and place of beginning, the last described course forming an interior angle of 79 deg. 21 min. with the first described course and containing 0.9083 acres, more or less, as shown on a map entitled "Map of a portion of Parcel No. 13 on the Water Conduit Right-of-Way, Section No. 5", made by the City Engineer on May 12, 1950.

Subject to restrictions, covenants, conditions, easements and agreements of record, if any, affecting said premises.

Subject to a Right of Way Agreement recorded in Book 1271 of Deeds at Page 189.

Excepting therefrom premises conveyed to Niagara Mohawk Power Corporation by deed dated March 24, 1964, and recorded March 30, 1964, in Book 1788 of Deeds at Page 69.

Excepting therefrom premises conveyed to Water District No. 1 of the Town of Bethlehem by deed dated November 30, 1978 and recorded December 18, 1978, in Book 2162 of Deeds at Page 398.

Subject to Right of Way and Easement dated October 12, 1981, and recorded March 11, 1982, in Book 2220 of Deeds at Page 267.

Excepting therefrom premises conveyed to Water District No. 1 of the Town of Bethlehem by deed dated December 16, 1982, and recorded December 17, 1982, in Book 2232 of Deeds at Page 930.

Excepting therefrom premises conveyed to Papa by deed dated December 16, 1982, and recorded December 17, 1982 in Book 2232 of Deeds at Page 942.

Subject to Amended Right of Way Agreement dated July 28, 1986 and recorded August 29, 1986 in Book 2347 of Deeds at Page 779.

Schedule A 2 of 2